(340 P.3d 515)
Nos. 110,736
110,737

STATE OF KANSAS, *Appellee*, v. DAJUAN McGILL, *Appellant*.

Opinion filed January 9, 2015.

*Corrine E. Johnson*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., McANANY, J., and BURGESS, S.J.

HILL, J.: Dajuan McGill appeals the revocation of his felony probation. He contends the district judge could only impose an intermediate sanction in his case because the judge failed to first find that the safety of the public or McGill's own welfare would be jeopardized if he was not sent to prison, that he had committed a new felony or misdemeanor, or that he had absconded from supervision. McGill argues K.S.A. 2013 Supp. 22-3716 controls the issue. Because the statutory amendments mentioned by McGill apply only to violations occurring on and after July 1, 2013, we hold the amendments to that law are inapplicable here since McGill's probation violation occurred before that date.

*This was not the first revocation hearing in this case.*

In April 2009, McGill pleaded guilty to one count of aggravated burglary and one count of theft and received a suspended 34-month prison sentence. The court then ordered McGill to serve 36 months' probation with 24 months' postrelease supervision. Mc-

Gill's probation has been revoked on five occasions prior to this current revocation. On one occasion, McGill had entered a no contest plea to one count of aggravated battery, resulting in a suspended 26-month prison sentence. The court, in response, revoked his probation but then reinstated him on a new term of probation. The warrant regarding McGill's current probation violation hearing was filed on May 14, 2013. McGill's probation revocation hearing was held on July 24, 2013. This time, the district court revoked McGill's probation and sent him to prison to serve his 60-month sentence.

*False paychecks became an issue in this case.*

McGill was to gain and maintain employment as a condition of probation. He was required to provide proof of employment to Intensive Supervision Officer Luis Navarro. McGill informed Navarro he was employed through Quality Lawncare and Remodeling. McGill said the address of the business was 1406 North Pennsylvania, in Wichita, Kansas. However, the owner of the business located at that address, Warren Pyles, testified to the contrary. Pyles testified he owned an excavating and contracting shop located at 1406 North Pennsylvania, which was not Quality Lawncare and Remodeling. He also testified no business similar to Quality Lawncare and Remodeling had ever operated out of the Pennsylvania address.

As proof of employment, McGill had given Officer Navarro two paychecks. When Navarro questioned McGill's employment, he went to the bank to verify the legitimacy of the second check. The checks were issued in the name of Quality Lawncare and Remodeling. The account was opened by Jason Engleman. Engleman lived with McGill at the residential center. The checks were signed by someone other than Engleman, who was the sole proprietor of the account. The service manager informed Navarro the check was not a negotiable instrument. No checks had ever cleared the account from which McGill's paychecks were written.

Navarro filed a warrant on May 14, 2013, alleging McGill violated the terms of probation by failing to provide proof of employment, by providing false paychecks to Navarro on two occasions,

and McGill was "out-of-place of assignment." Ultimately, the court found that McGill had committed a new crime by giving the false paychecks to his probation supervisor and revoked McGill's probation.

To us, McGill makes three arguments. First, the court failed to make particularized findings as required by K.S.A. 2013 Supp. 22-3716, and it should have only imposed an intermediate sanction of brief periods of incarceration in the county jail, instead of sending him to prison. Next, McGill argues the court misinterpreted the statute when it found he had committed a new crime. Finally, in McGill's view, his due process rights were violated when he was never given any notice that he had committed a new crime. We will address those issues in that order.

*We review the statute in question.*

After its amendment, K.S.A. 2013 Supp. 22-3716 offers the district court a variety of intermediate sanctions that it could impose upon defendants on probation that have violated the terms or conditions of their probation. Basically, the court can now send defendants to jail for brief periods instead of sending them to prison to serve their sentences. See K.S.A. 2013 Supp. 22-3716(c)(1)(A)-(D).

But a court can pass over these intermediate sanctions and impose the original sentence upon those who violate their probation if the court finds that "the safety of the members of the public will be jeopardized or that the welfare of the inmate will not be served by such [an intermediate sanction]." K.S.A. 2013 Supp. 22-3716(c)(4). Further, if the inmate has committed "a new felony or misdemeanor or abscond[ed] from supervision," the court need not impose an intermediate sanction. K.S.A. 2013 Supp. 22-3716(c)(8).

Thus, McGill's argument becomes clear on this point. He believes that because the court did not make any findings, other than finding that he committed a new crime by giving false paychecks to his probation supervisor as proof of employment, the court could legally impose only an intermediate sanction for his probation violation. McGill is not helped by that law.

Our legislature recently amended K.S.A. 2013 Supp. 22-3716(c). It made manifest its intent regarding this statute's application. The legislature plainly added an application date to K.S.A. 2013 Supp. 22-3716(c):

"(12) The violation sanctions provided in this subsection *shall apply to any violation of conditions of release or assignment or a nonprison sanction occurring on and after July 1, 2013*, regardless of when the offender was sentenced for the original crime or committed the original crime for which sentenced." (Emphasis added.) L. 2014, ch. 102, sec. 8.

In his reply brief, McGill addressed the amendments in the 2014 legislative session laws. It appears that rather than concede that the legislature has since amended the statute, McGill manipulates the language in order to support his view. McGill blatantly ignores the first part of the amendment which states: *"The violation sanctions provided in this subsection shall apply to any violation of conditions of release or assignment or a nonprison sanction occurring on and after July 1, 2013,"* (emphasis added) and instead chooses only to include the following: " 'regardless of when the offender was sentenced for the original crime or committed the original crime for which sentenced,' " as support for his argument. McGill is unable to provide any true support for his argument that K.S.A. 2013 Supp. 22-3716(c) should apply retroactively.

Our legislature has now made its intent clear—the date of the defendant's probation violation controls whether the intermediate sanction provisions of K.S.A. 2013 Supp. 22-3716(c) apply. McGill's probation violations occurred before July 1, 2013. Accordingly, the district court was not required to impose intermediate sanctions. We turn now to the remaining issues.

For the first time on appeal, McGill argues the language in K.S.A. 2013 Supp. 22-3716(c)(8) is vague. Specifically, he contends the phrase " 'commits a new felony' " is ambiguous and claims the rule of lenity applies in his case, and this court must interpret the statute in his favor.

The language McGill quotes is not in K.S.A. 2012 Supp. 22-3716, the applicable statute in McGill's case. We need not consider McGill's "vagueness" argument, nor address McGill's rule of lenity argument simply because it is not applicable.

Finally, McGill argues the district court violated his due process rights under K.S.A. 2013 Supp. 22-3716 and under the Fourteenth Amendment to the United States Constitution. Specifically, McGill contends that he was denied his fundamental right to notice because the warrant did not allege he had committed a new crime. McGill concedes he did not raise this issue below, but because he was denied due process, the district court lacked subject matter jurisdiction to revoke his probation.

Fundamentally, issues relating to the court's subject matter jurisdiction may be raised at any time. *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 319, 255 P.3d 1186 (2011). In *State v. Hall,* 287 Kan. 139, 144, 195 P.3d 220 (2008), our Supreme Court held: "Nevertheless, even if the State had complied with K.S.A. 22-3716, a district court may be deprived of jurisdiction if an alleged probation violator is denied due process." However, the due process rights discussed in *Hall* required the State to "act without unreasonable delay in the issuance and execution of an arrest warrant." 287 Kan. at 144.

Here, the district court had subject matter jurisdiction and McGill's due process rights were not violated.

The Supreme Court of the United States has held that in a probation revocation hearing, the defendant is not due the full panoply of rights due in a criminal case. See *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). The minimum due process rights afforded to a defendant in a probation revocation hearing are governed by the applicable version of K.S.A. 22-3716. See *State v. Billings*, 30 Kan. App. 2d 236, 237-38, 39 P.3d 682 (2002).

"Minimum due process includes written notice of the claimed violations of probation, disclosure to the probationer of the evidence against him or her, the opportunity to be heard in person and to present evidence and witnesses, the right to confront and cross-examine adverse witnesses, a neutral and detached hearing body, and a written statement by the factfinder as to the evidence relied on and reasons for revoking probation. The probationer also has a right to the assistance of counsel." 30 Kan. App. 2d at 238.

In the warrant provided to McGill, Navarro listed the alleged probation violations:

"1. The defendant failed to provide proof of employment.
"2. On 4/25/13 and 5/6/13, the defendant provided false paychecks to his ISO.
"3. The defendant was out-of-place of assignment."

Clearly, McGill's due process rights were not violated, and the district court had subject matter jurisdiction to revoke his probation. He received proper notice of the probation violations prior to his hearing, he was represented by counsel, and he was able to cross-examine witnesses and provide evidence. McGill received the minimum due process rights as required under K.S.A. 2012 Supp. 22-3716.

Looking more deeply into what the district court did in this case, we are satisfied that none of McGill's rights have been abridged. When making its findings, the district court relied on the files in both McGill's aggravated burglary and aggravated battery cases. The district court also considered transcripts and testimony from McGill's previous probation revocation hearings. The district court noted McGill committed a violent felony while on probation, he continued to use alcohol and/or substances, there was a pattern of his failure to comply with probation conditions, and his "conscious disregard of the law in his driving on suspended license." The district court found McGill was not amenable to probation, he had exhausted all programs available, and he perpetrated a fraud. The district court also made a finding that McGill committed a new criminal offense—making a false information. The district court held, "So by all appearances the Court makes a finding [McGill] also committed a new crime so I am bypassing the requirements of [K.S.A. 2013 Supp. 22-3716] based on the public safety would be jeopardized [sic]."

After the district court decided there was evidence McGill violated his probation, it had the discretion to revoke his probation. Once there is evidence that probation was violated, the decision to revoke probation rests within the sound discretion of the district court. State v. Gumfory, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). We see no abuse of discretion here.

We affirm the district court's revocation of McGill's probation.